UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

IRYNA HRACHOVA, individually and on behalf
of Zhanna Hrachova,

                    Plaintiff,

v.                                                                    Case No.  5:09-cv-95-Oc-GRJ

DENVER DEWAYNE COOK,

                    Defendant.

_____

## MEMORANDUM DECISION AND ORDER

        This lawsuit was brought by Plaintiff, Iryna Hrachova, individually and on behalf

of her daughter, Zhanna Hrachova ("Hrachova") against Denver Dewayne Cook

("Cook") for specific performance of an Affidavit of Support, Form I-864, signed by

Defendant on Plaintiff's behalf.  Both parties proceeded *pro se.*  A non-jury trial was

held before the undersigned on October 28, 2009.  In accordance with Fed. R. Civ. P.

52, the following constitutes the Court's findings of fact and conclusions of law.[1]

## I. DISCUSSION

### A.    *Factual Record*

        The following facts were established by a preponderance of the testimony and

documentary evidence offered and admitted into evidence.  Hrachova was the sole

witness testifying on her behalf and Cook only offered the testimony of himself.

Hrachova was born in the Ukraine and has degrees from a Ukranian University in

homeopathy treatment and linguistic science.   Hrachova was previously married to a

_____

[1] As stated on the record at trial, Plaintiff's Motion For Summary Judgment (Doc. 40) is **DENIED** as **MOOT**.

Russian man[2] and has a daughter, Zhanna, from that marriage.  Cook lives in Lake County, Florida.  For the past ten years he has worked in the parts department at a Chevrolet dealership in Eustis, Florida.  He also has a side business in computer consulting.

In 1999, Cook placed an advertisement in a Ukranian newspaper to pursue a Russian bride.  Hrachova responded to the advertisement and the two struck up a relationship over the internet and email.  In March 2000, Cook went to the Ukraine to meet Hrachova.  Cook returned to the Ukraine in August 2000 and brought Hrachova, and her daughter, who was then ten-years old, back with him to his home in Eustis, Florida.  Hrachova entered the United States on a fiancee visa.  Shortly thereafter, on September 8, 2000, Hrachova and Cook were married at the Lake County Courthouse in Eustis, Florida.[3]

Cook executed an Affidavit of Support – Form I-864 – on behalf of Plaintiff and her daughter.[4] Pursuant to the express terms of Form I-864, by signing the form, Cook agreed "to provide the sponsored immigrant(s) whatever support is necessary to

---

[2] Plaintiff testified that her first husband was in the Russian "diplomatic service" and that when Yeltsin came to power and there was a regime change, her husband disappeared and was never heard from again.

[3] There was some confusion at trial regarding the date Cook and Hrachova got married.  Cook testified that they were married on September 7, 2000; while Hrachova testified that the marriage license was dated August 30, 2000. This testimony was not necessarily inconsistent.  Section 741.04(3), Fla.Stat. requires all Florida residents applying for a marriage license to take a four hour premarital course or wait three days from the date of application for the marriage license to become valid.  As such, it would not be unusual for the marriage license to predate the date of marriage.

[4] The Affidavit of Support, Form I-864 was Plaintiff's Exhibit F at trial.

maintain the sponsored immigrant(s) at an income that is at least 125 percent of the Federal poverty guidelines."[5]

After a few weeks of marriage, things started to go badly.  At the end of October 2000, Hrachova reported to the police that she had been the victim of domestic violence.  While there is a dispute as to what actually happened, Cook was arrested, directed to have no contact with Hrachova or her daughter and ordered to pay Hrachova $1,000.00 in emergency support.  Hrachova and her daughter continued to live in the marital home while Cook lived with family in Mt. Dora, Florida.  Cook admits that out of spite he disconnected the power and telephone service at the marital home.

In December 2000 or January 2001, Cook filed for divorce.  The parties dispute where Hrachova and her daughter lived from January 2001 through May 2001.  Hrachova testified that once she was served with divorce papers in January 2001, she and her daughter moved out of the marital home and lived in various shelters and homes of different friends.  Cook testified that Hrachova continued to live in the marital home, but that she might have spent a few nights in shelters because he had turned the power off at the house.  According to Cook, he and Hrachova attended mediation in February or March of 2001 and they agreed to attempt reconciliation.  Cook testified that he had the no victim contact restriction lifted and he then moved back into the marital home with Hrachova and her daughter from March 2001 through May 2001, during which time he provided them with financial support.  Hrachova denied that she

---

[5] See Affidavit of Support, Form I-864 at 4.

and Cook ever attempted to reconcile or that she continued to live in the marital home after she was served with divorce papers.

In May 2001, Hrachova and her daughter went to the Ukraine to spend the summer.   Cook paid for their plane tickets.  While they were in the Ukraine, Cook abandoned his house because it was being foreclosed and he put Hrachova's possessions in storage.  Cook moved into the house of friend, from whom he rented a room for almost two years.  In addition, the car he had purchased for Hrachova was repossessed.  Cook testified that he sent letters to Hrachova in the Ukraine advising her of the events and telling her that she could not return to the marital home.  Hrachova denied receiving any letters.  At the end of July 2001, Hrachova and her daughter returned to Florida.

On May 31, 2002, the state court in Lake County entered a final judgment of dissolution of marriage and awarded Plaintiff $29,467.64 in alimony.  The state judge did not address any obligation under the affidavit of support at issue here. After the divorce was final, Cook filed bankruptcy.  By the end of 2003, Hrachova had obtained her green card with permanent resident status.  By July 2004, Cook had completely paid his alimony obligation to Hrachova.

On February 24, 2009, Hrachova filed the instant action demanding that Cook perform his obligations under the Affidavit of Support from October 28, 2001 through the present. At trial, Hrachova testified that from 2001 through 2009, her income had never exceeded 125% of the poverty level.

Plaintiff testified that in 2005 her gross income was $1,412.00 from her job at a restaurant.  In 2008, her gross income was $163.00 from her job in home health care.

Otherwise, Hrachova had been living on loans from her neighbors that she is obligated

to repay.  Plaintiff testified that she has had a number of obstacles to obtaining and

keeping a job – i.e., she is not a United States citizen; she was unable to work until she

received her permanent resident card at the end of 2003; she was in a serious car

accident at the end of 2002 and was unable to work for 24 months; and during the latter

part of 2007 and 2008 she cared for her mother who was seriously ill with colon cancer.

Plaintiff testified that she has been on 6-8 interviews and has applied for jobs but she

has been unable to secure employment.

**B.**   ***Conclusions of Law***

   **(1)    Valid and Enforceable Contract**

Under federal law, immigrants who are likely to become a public charge are

ineligible for admission into the United States unless their applications for admission are

accompanied by an Affidavit of Support – Form I-864.[6]  Likewise, family-sponsored

immigrants seeking admission are admissible only if the person petitioning for the

immigrants' admission signs an Affidavit of Support.[7]  By signing the affidavit, the

sponsor agrees "to provide the sponsored immigrant(s) whatever support is necessary

to maintain the sponsored immigrant(s) at an income that is at least 125 percent of the

Federal poverty guidelines."[8] Federal courts have consistently found that Form I-864 is

---

[6] 8 U.S.C. 1182(a)(4).

[7] 8 U.S.C. 1182(a)(4)(C).

[8] See Affidavit of Support, Form I-864 at 4.

a legally binding and enforceable contract between the sponsor and the sponsored immigrant.[9]

While Cook concedes that he signed the affidavit of support, he suggested at the beginning of trial that he was deceived into signing the affidavit.  However, Cook failed to develop that defense at trial.  In fact, the undisputed evidence shows that after conferring with an immigration attorney, Cook decided to sign the affidavit of support and there was no evidence suggesting that Hrachova did anything to encourage Cook to sign it.  Accordingly, the Court rejects Cook's argument that he was somehow tricked into signing Form I-864.   As such, the Court finds that Form I-864 is a valid and enforceable contract between Hrachova and Cook.

The fact that Hrachova and Cook are divorced did not terminate Cook's obligation to support Plaintiff according to Form I-864.  Pursuant to the INA and the terms of Form I-864, a sponsor's support obligations to the sponsored immigrant under an affidavit of support terminate only upon the occurrence of one of five circumstances: (1) the sponsor's death; (2) the sponsored immigrant's death; (3) the sponsored immigrant becoming a U.S. citizen; (4) the sponsored immigrant permanently departing the U.S.; or (5) the sponsored immigrant being credited with a total of 40 qualifying quarters of work.[10]  Because financial obligations under the affidavit of support terminate only upon the occurrence of one of these five enumerated circumstances, divorce does not terminate the contract created by the affidavit of support.  Indeed, instructions

---

[9] See e.g., Younis v. Farooqi, 597 F.Supp.2d 552 at 554 (D. Md. 2009); Shumye v. Felleke, 555 F.Supp.2d 1020, 1023 (N.D. Cal. 2008); Cheshire v. Cheshire, 2006 WL 1208010, at *3 (M.D.Fla. May 4, 2006).

[10] 8 U.S.C. §1183a(a)(2),(3); Affidavit of Support, Form I-864 at 4.

accompanying the affidavit of support Form I-864 expressly provides notice that "divorce does not terminate the obligation" of a sponsor to support the sponsored immigrant.  The view that divorce does not terminate the obligation of a sponsor has been recognized by every federal court that has addressed the issue.[11]

### (2)    Remedy

Although Hrachova contends that she is entitled to support beginning in November 2000,[12] there was conflicting testimony at trial as to when Hrachova and her daughter moved out of the marital home and for how long, and whether Hrachova and Cook ever attempted to reconcile.  Indeed, it was not until Hrachova and her daughter returned from the Ukraine at the end of July 2001 that the evidence established there was a clear break.  At that point, it was undisputed that Hrachova and her daughter did not live in the marital home and that Cook was not providing them support, other than the court-ordered alimony. Therefore, based upon the preponderance of the evidence presented at trial, the Court finds that Cook failed to support Plaintiff at 125% of the federal poverty level beginning in August 1, 2001 and not beginning in October 2000 as claimed by Plaintiff.  Accordingly, from August 1, 2001 forward Cook remains obligated to provide Hrachova with support equal to 125% of the federal poverty guidelines.

To determine the appropriate damages, courts should compare the sponsored immigrant's annual income for the particular years at issue against the 125% poverty threshold for each particular year.  In the instant case it is undisputed that Hrachova's

---

[11] See e.g., Shumye, 555 F.Supp.2d at 1024; Cheshire, 2006 WL 1208010 at *4-5.

[12] "PLAINTIFF'S Calculation of direct damages as a direct result of Defendant's Breach of Contract" was marked for identification as Plaintiff's Exhibit C.

income did not exceed 125% of the federal poverty levels during any of the years at issue -- i.e., 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, and 2009.

For a household size of two people,[13] the poverty guidelines for 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, and 2009 are as follows:[14]

| Year | 100% of Poverty Line |
|------|----------------------|
| 2001 | $11,610.00 |
| 2002 | $11,940.00 |
| 2003 | $12,120.00 |
| 2004 | $12,490.00 |
| 2005 | $12,830.00 |
| 2006 | $13,200.00 |
| 2007 | $13,690.00 |
| 2008 | $14,000.00 |
| 2009 | $14,570.00 |

The following figures represent 125% of the above federal poverty levels, calculated by a pro rata amount for 2001 (from August 1, 2001 through December 31, 2001) – and calculated for the 2009 year-to-date, November 3, 2009:

[13] There was no dispute that a two-person household is the appropriate household size for the purpose of calculating damages. In the affidavit of support, Cook stated that the household size was "3." Since Hrachova is no longer married to and living with Cook, the household size involved is now two people – Hrachova and her daughter. See e.g., Stump v. Stump, 2005 WL 2757329, *3-6 (N.D. Ind. 2005.)

[14] The "Computations for the 2009 Annual Update of the HHS Poverty Guidelines for the 48 Contiguous States and the District of Columbia" for 2001 through 2009 from the United States Department of Health & Human Services were admitted into evidence as Plaintiff's Exhibit A.

8

| Year | 125% of Poverty Line |
|------|----------------------|
| 2001 | $6,083.28[15] |
| 2002 | $14,925.00 |
| 2003 | $15,150.00 |
| 2004 | $15,612.50 |
| 2005 | $16,037.50 |
| 2006 | $16,500.00 |
| 2007 | $17,112.50 |
| 2008 | $17,500.00 |
| 2009 | $15,319.30[16] |

Accordingly, the total of 125% of the federal poverty level for the applicable period from August 1, 2001 through November 3, 2009 is $134,240.08.

Cook's financial obligations under the Affidavit of Support should be reduced, however, by the amount of income or benefits Hrachova received after August 1, 2001. Based on the undisputed testimony and evidence at trial, the Court finds that Hrachova received the following income and benefits since August 1, 2001: (1) $29,467.64 in alimony from Cook; (2) $1,412.00 in gross wages in 2005; and (3) $163.00 in gross wages in 2008.[17]  Thus, the total amount of income or benefits received from these

---

[15] The pro rata amount for August 1, 2001 through December 31, 2001 was computed by multiplying 153 days (August 1- December 31) times the daily rate of $39.76 ($14,512.50/365).

[16]  The pro rata amount for January 1, 2009 through November 2, 2009 was computed by multiplying 307 days (January 1 - November 3) times the daily rate of $49.90 ($18,212.50/365).

[17] Because Cook was ordered to pay Hrachova $1,000.00 in emergency support in 2000 and the evidence showed that it was paid prior to August 1, 2001, the Court did not include the emergency support in this figure.

sources is $31,042.64.  Based on the above figures, Cook owes Hrachova $103,197.44 for past support accumulated between August 1, 2001 and November 3, 2009.

Although Cook did not expressly raise the defense of failure to mitigate he did voice objection to the fact that he has been divorced since 2002 and despite the fact that more than six years have passed Hrachova still is not a citizen and still does not have a jog.  Because the duty to mitigate, or avoid, damages is a basic tenet of contract law[18] the Court will briefly address the issue of mitigation. The fundamental problem with Cook's complaint is that he did not present any evidence at trial suggesting that Hrachova has not pursued her citizenship nor any evidence showing that Plaintiff has not made reasonable efforts to get a job.  To the contrary, Hrachova testified that she briefly worked in 2005 and 2008 and that while she has attempted to obtain other jobs, she has faced a number of obstacles to finding employment including the fact that she is not a United States citizen and was not even eligible to work until she received her permanent resident card at the end of 2003. Hrachova also testified that she was unable to obtain employment because she was in a serious car accident at the end of 2002 and was recovering from her injuries for approximately 24 months. Lastly, Hrachova testified that she was unable to work in the latter part of 2007 and the calendar year 2008 because she was caring for her gravely ill mother at the Moffit Cancer Center in Tampa, Florida.

At trial, Cook testified that he does not have sufficient financial resources to pay his support obligations to plaintiff, partly due to various health related issues.  While the

---

[18] See Stump, 2005 WL 2757329, at *7.

10

Court recognizes and sympathizes with Mr. Cook's dire financial situation and substantial health issues, a sponsor's inability pay the judgment is irrelevant to the issue of liability.[19]

Accordingly, based upon a preponderance of the evidence presented, the Court concludes that Hrachova is entitled to judgment against Cook in the sum of $103,197.44.  Further, as required by the Form I-864, Cook is required to continue to support Hrachova at 125% of the current federal poverty level until such time as the obligation expires by law.

### (3)   Collection Costs

Hrachova also requests the costs of collection that she might ultimately incur in attempting to collect this judgment.[20]   Although Form I-864 provides that the sponsor may be held liable "for costs of collection, including attorney fees," there is no legal basis for the Court to award collection costs *before* Hrachova has incurred them. Moreover, other than the proffer of an affidavit of an attorney, which the Court did not admit into evidence because it was hearsay, there was no evidence offered to support Hrachova's claim for collection costs. Because Hrachova has not yet incurred any collection costs incident to enforcement of the support obligation inclusion of any sum for the costs of future collection would be speculative and improper. Accordingly,

---

[19] See Cheshire, 2006 WL 1208010 at *7.

[20] At trial, Hrachova clarified that she is requesting costs related only to the future cost of collecting the judgment – and not, costs incurred in obtaining the judgment. Pursuant to Rule 54 of the Federal Rules of Civil Procedure Hrachova as the prevailing party would be entitled to costs. However, Hrachova was granted permission to proceed *in forma pauperis* and thus did not incur any costs in filing this suit. And to the extent that Hrachova claims she is entitled to attorney's fees under Rule 54(d)(2) as an element of damages she failed to prove the amount of the costs and fees at trial by failing to offer any testimony in support of her request.

Hrachova's request that the Court include a sum certain representing collection costs, not yet incurred, is due to be **DENIED**.

## II.  CONCLUSION

Accordingly, for the reasons discussed above, the Clerk is directed to enter judgment in favor of Plaintiff, Iryna Hrachova, individually and o/b/o Zhanna Hrachova, and against Defendant, Denver Dewayne Cook, in the sum of $103,197.44**.**  Further, the Defendant's future obligation to support plaintiff at 125% of the then existing federal poverty level shall continue until such time as the obligation expires by law. The Clerk is directed to terminate all pending motions and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on November 3, 2009.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
  *Pro Se* Plaintiff
  *Pro Se* Defendant