UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

IRYNA HRACHOVA,
    Plaintiff,

v.                            Case No: 5:09-cv-95-PRL

DENVER DEWAYNE COOK,
    Defendant.

_____

**ORDER**

In February 2009, Plaintiff Iryna Hrachova, individually and on behalf of her daughter, Zhanna Hrachova initiated this action against Denver Dewayne Cook for specific performance of an Affidavit of Support, Form I-864, signed by Defendant on Plaintiff's behalf. By signing the form, Mr. Cook agreed "to provide the sponsored immigrant(s) whatever support is necessary to maintain the sponsored immigrant(s) at an income that is at least 125 percent of the Federal poverty guidelines."

A non-jury trial was held on October 28, 2009. Shortly thereafter, on November 3, 2009, the Court entered its Memorandum Decision and Order finding that Ms. Hrachova was entitled to judgment against Mr. Cook in the sum of $103,197.44 for past support accumulated between August 1, 2001, and November 3, 2009. (Doc. 44). The Court further found that Mr. Cook was required to continue to support Ms. Hrachova at 125% of the current federal poverty level until such time as the obligation expires by law. Judgment was entered the next day consistent with the Order. (Doc. 45).

This case now centers on Ms. Hrachova's seventeen-year quest to collect the judgment that she claims now exceeds $180,000, with additional support and accrued interest. In her efforts to collect the judgment, Ms. Hrachova has obtained various writs of

garnishment, including one against Empower Retirement and another issued to Truist Bank in Eustis, Florida. The Court held a hearing on May 20, 2026, during which the issues relating to these writs were discussed.[1]

### I.      Empower Retirement

On October 15, 2025, Ms. Hrachova filed a motion for writ of garnishment against Empower Retirement (Doc. 91), which the Court granted. (Doc. 95). The Clerk issued the writ on October 21, 2025 (Doc. 96), and it was served on January 15, 2025. (Doc. 104). On January 29, 2026, Mr. Cook filed a motion for an extension of time and to dissolve the writ. (Doc. 105). The Court granted the extension until March 27, 2026. (Doc. 106). On February 4, 2026, Ms. Hrachova filed a motion for default, final default judgment, and order to disburse funds held by Empower in the amount of $6,587.83. (Doc. 107). Ms. Hrachova attached a letter that she received from Empower advising that Mr. Cook's IRA account, which was opened on December 29, 2023, has a total account value of $6,587.83 (as of market close on January 21, 2026). On March 24, 2026, Keith Petrochko, Esq., appeared on behalf of Mr. Cook and filed an answer and request for hearing (Doc. 115), affidavit of Mr. Cook (Doc. 113), and an exhibit list (Doc. 114).

Mr. Cook claims exemption from garnishment as to the funds held in his IRA account pursuant to Fla. Stat. § 222.21. Mr. Cook has offered evidence that the funds in the IRA held with Empower Retirement consist entirely of a direct rollover from his former employer's retirement plan—i.e., the Vann Gannaway Chevrolet, Inc. 401(k) Retirement Plan (also held with Empower Retirement). Further, Mr. Cook has offered evidence that

---

[1] The hearing was set to address Mr. Cook's verified claim of exemption as to the Empower Retirement writ. However, the Court also heard argument related to the Truist Bank writ.

since the rollover, he has not deposited any additional funds into the account, nor has he commingled the retirement funds with any personal or non-exempt assets.

Funds in a 401(k) account are exempt pursuant to Fla. Stat. § 222.21, and a direct transfer of retirement funds between tax-exempt accounts does not affect their exempt status. *See In re Maxwell*, No. 6:09-BK-3480-ABB, 2009 WL 3381185, at 1 (Bankr. M.D. Fla. Oct. 5, 2009). Florida courts have recognized that "'the purpose of [§ 222.21] is to confer on retirement plans a broad exemption from the claims of creditors' and the Florida Legislature 'made the policy decision that it should protect the assets of IRA's and pension plans.'" *Kearney Construction Co. LLC v. Travelers Casualty & Surety Company of America*, No. 8:09-cv-1850-T-30TBM, 2017 WL 4277164, at *9 (M.D. Fla. Aug. 16, 2017) (quoting Dunn v. Doskocz, 590 So. 2d 521, 522, n.2 (Fla. Dist. Ct. App. 1991). Thus, under Florida law, Mr. Cook's IRA funds are exempt from garnishment. Nevertheless, Ms. Hrachova filed an objection arguing that she is entitled to garnish Mr. Cook's IRA to collect her federal judgment. (Doc. 121).

As an initial matter, Ms. Hrachova claims that her objection is timely, based on her notice of unavailability filed on February 17, 2026, in which she requested an opportunity to respond to any filings by Mr. Cook until May 6, 2026. (Doc. 110). The Court did not grant this request. Even so, Ms. Hrachova did not file her objection until May 18, 2026. Thus, it was untimely, and the writ should be dissolved on the basis alone. Pursuant to Florida law:

> Upon the filing by a defendant of a sworn claim of exemption and request for hearing, a hearing will be held as soon as is practicable to determine the validity of the claimed exemptions. If the plaintiff or the plaintiff's attorney does not file a sworn written statement that answers the defendant's claim of exemption within 8 business days after hand delivering the claim and request or, alternatively, 14 business days if the claim and request were served by mail, no hearing is required and the clerk must automatically dissolve the writ and notify the parties of the dissolution by mail.

Fla. Stat. §77.041(3).

Moreover, even if timely, Ms. Hrachova's objection is not well-taken. The Court has reviewed the cases cited by Plaintiff and finds that they do not support her position that Mr. Cook's IRA account is subject to garnishment in this proceeding.

The genesis of Plaintiff's argument is Mr. Cook's prior Chapter 7 bankruptcy case—*In re Cook*, 473 B.R. 468 (Bankr. M.D. Fla. 2012)—in which the bankruptcy court determined that the federal court judgment pursuant to the Affidavit of Support was a "domestic support obligation" under the bankruptcy code §101 and was excepted from discharge pursuant to 11 U.S.C. § 523(a)(5). The bankruptcy code defines "domestic support obligation" as a debt owed to or recoverable by a spouse, former spouse, or child of the debtor, in the nature of alimony, maintenance, or support, whether or not so designated. 11 U.S.C. § 101(14A). The debt must have been established on or before the date of the bankruptcy by reason of a separation agreement, divorce decree, property settlement, order of court record, or determination of non-bankruptcy law. Plaintiff has cited no case applying the phrase "domestic support obligation" outside of the bankruptcy context.

Nevertheless, Plaintiff argues that the designation as a "domestic support obligation" by the bankruptcy court, allows her to garnish Mr. Cook's IRA in this non-bankruptcy proceeding. Plaintiff again turns to the bankruptcy code which provides an exemption for IRA accounts but also creates an exception for domestic support obligations. To that end, Plaintiff cites *In re Crum*, 414 B.R. 103, 110–11 (Bankr. N.D. Tex. 2009). The dispute in *Crum* occurred during the debtor's chapter 7 bankruptcy case, where his former wife sought to liquidate exempted assets to collect a domestic support obligation (i.e., alimony and child support). *Id.* at 105–06, 108, 110–11. The bankruptcy court held that while the debtor's IRA

accounts were generally exempt under § 522 from the claims of his pre-petition creditors, the accounts were not exempt from the claims of his former spouse for a domestic support obligation.

At the most basic level, Plaintiff's reliance on *Crum* and these provisions from Chapter 5 of the bankruptcy code (i.e., §§ 522 and 523) is misplaced. Indeed, by its express terms, Chapter 5 only "appl[ies] in a case under chapter 7, 11, 12 or 13 of this title." 11 U.S.C. § 103(a). Accordingly, while Plaintiff's arguments might be persuasive in a bankruptcy proceeding, they are not applicable in this case.

Moreover, even if Mr. Cook's IRA could be garnished for child support or alimony obligations under Florida law—and Plaintiff does not make this argument—the federal judgment is neither. Indeed, as Plaintiff has acknowledged, courts have held that the obligation pursuant to Form I-864 is a federal obligation that exists separately from rights that exist under state law for child support or alimony. *See Brown v. Brown*, 700 F.Supp.3d 402 (E.D. Va. 2023) (holding that while the property settlement agreement in the divorce proceedings may restrict the wife's right to seek support or maintenance under Maryland state law, the federal obligation the husband incurred under the Form I-864 existed separately and could not be excused by the wife). Indeed, Mr. Cook has already paid the $29,467.64 in alimony awarded to Ms. Hrachova in the state court divorce proceedings. *In re Cook*, 473 B.R. 468, 471 (Bankr. M.D. Fla. 2012). And based on a review of the state court docket, Mr. Cook filed his "Petition for Dissolution of Marriage with No Children" and thus, no child support was awarded.[2]

---

[2] The divorce case which was filed in Lake County, Florida—No. 35-2000-DR-003552-AXXX-XX— can be accessed at https://courtrecords.lakecountyclerk.org

Accordingly, the Court finds that Mr. Cook's IRA account with Empower ending in 0101 is exempt from garnishment under Florida law. In addition, Ms. Hrachova's objection to the exemption is untimely. The writ of garnishment issued to Empower Retirement (Doc. 96) is hereby **dissolved,** and the restrained funds shall be promptly released. Ms. Hrachova's motion for judgment as to the IRA funds held by Empower Retirement is **denied.** (Doc. 107)

## II.    Truist Bank Writ of Garnishment

On October 21, 2025, the Clerk issued a writ of garnishment to Truist Bank in Eustis, Florida. (Doc. 96). On January 14, 2026, Truist Bank filed its answer to the writ. (Doc. 102). Truist Bank states that it is in doubt as to whether any indebtedness or property in its possession or control is required by law to be included in the Answer or retained. Truist Bank identified two accounts: one ending in 2195 and one ending in 7620. Truist retained $100.00 from the account ending in 2195 pursuant to Fla. Stat. §§ 77.06(3) and 77.19. Truist Bank claims that the account ending in 7620 is fully protected under 31 CFR § 212, which protects accounts from garnishment when a federal benefit payment has been directly deposited and neither the United States or a State child support enforcement agency has attached or included a Notice of Right to Garnish Federal Benefits. In addition, Truist Bank demands that Ms. Hrachova pay its counsel the statutory $100.00 attorney's fee pursuant to Fla. Stat. § 77.28.

On February 6, 2026, Ms. Hrachova filed a motion for extension of time to respond, to which she attached her proposed "Reply to Truist Banks Answer to Writ of Garnishment." (Doc. 109). The Court will **grant** Ms. Hrachova's motion (Doc. 109) to the extent that her reply (Doc. 109-1) is deemed timely filed.

In her reply, Ms. Hrachova advises that she provided Truist notification in writing that the federal benefit protections do not apply to this garnishment. Truist, however, would not change its Answer because, in its view, although 31 C.F.R. §212 does not protect federal benefits if a Notice is attached, that exception "only" applies if the Notice is from the United States or a state child support enforcement agency, which, in this case, it was not.

Dissatisfied with this position, Ms. Hrachova asks the Court to compel Truist Bank to (a) disclose the account type and balances for account ending in 7620; (b) identify and retain any funds in account 7620; and (c) produce documents sufficient to show any federal benefit tagging or the review applied and the basis for concluding that funds are exempt. Also, she asks that the Court confirm that the $100 held from account 2195 is held under the Writ for Plaintiff and is not subject to setoff for Truist's § 77.28 fee claim.

On February 23, 2026, Ms. Hrachova also filed a motion for issuance of a subpoena to Truist Bank, seeking account statements for account 7620 for the six months before service of the writ of garnishment and the two months after. (Doc. 111). And on May 18, 2026, she filed a motion to compel, asking the Court to require Truist Bank to provide information requested by the subpoena and to require Mr. Cook to complete the Fact Information Sheet. (Doc. 120). Plaintiff then filed a motion for final judgment against Truist in the amount listed in the writ of garnishment ($180,461.23) for "willful non-compliance to disclose nature and amounts of defendant's account ending 7620." (Doc. 122). Plaintiff then filed an amended motion for judgment. (Doc. 124).

Turning first to the **account ending in 2195**, Truist Bank is holding $100.00, and Mr. Cook has not claimed any exemption. Thus, Ms. Hrachova would be entitled to final judgment in the amount of $100.00. However, Fla Stat. § 77.28 provides in pertinent part:

> On rendering final judgment, the court shall determine the garnishee's costs and expenses, including a reasonable attorney fee, and in the event of a judgment in favor of the plaintiff, the amount is subject to offset by the garnishee against the defendant whose property or debt owing is being garnished.

**Accordingly, the $100.00 to which Ms. Hrachova is entitled is properly offset by Truist's costs and expenses in the amount of $100.00.**

As for the **account ending in 7620**, 31 C.F.R. Pt. 212 outlines the procedure a financial institution must take when receiving a garnishment order. As Truist Bank explained to Ms. Hrachova, the Notice of Right to Garnish Federal Benefits must be provided by the United States or a State child support enforcement agency using the Notice in Appendix B to Part 212 on official organizational letterhead. In this case, no such Notice was attached or included with the garnishment order. Accordingly, Truist was required to follow the procedures set forth in § 212.5 and § 212.6. (31 C.F.R. §212.4(c)).

Section 212.5 outlines the procedure whereby a financial institution is required to perform an account review. If the account review shows that a benefit agency deposited a benefit payment into the account during the lookback period, then the financial institution shall follow the procedures in §212.6, which governs "Rules and procedures to protect benefits." Pursuant to § 212.6(a):

> Protected amount. The financial institution shall immediately calculate and establish the protected amount for an account. The financial institution shall ensure that the account holder has full and customary access to the protected amount, which the financial institution shall not freeze in response to the garnishment order. An account holder shall have no requirement to assert any right of garnishment exemption prior to accessing the protected amount in the account.

And then § 212.6(c) specifically provides that "a protected amount calculated and established by a financial institution pursuant to this section shall be conclusively considered to be exempt from garnishment under law."

Accordingly, Truist's determination that the funds in the account ending in 7620 are entirely protected is conclusive. Thus, there is no basis for Plaintiff to subpoena records or for this Court to compel Truist to disclose additional information or produce records. As such, Plaintiff's motion for issuance of subpoena to Truist Bank (Doc. 111) and motion to compel discovery from Truist Bank (Doc. 120) are **denied.**

Like her argument about Mr. Cook's IRA, Ms. Hrachova contends that she is entitled to garnish Mr. Cook's otherwise exempt social security disability benefits to collect the final judgment. First, Plaintiff cites to 8 U.S.C. § 1183a(c), which provides that the remedies available to enforce an affidavit of support include any of the remedies set forth in §§ 3201, 3203, 3204, or 3205 of Title 28. Section 3205 governs garnishment. Under federal law, while social security disability benefits are generally exempt from execution, they are subject to garnishment for child support and alimony. See 42 U.S.C. § 659; *Johnson v. Saul*, No. 4:20-cv-942-JM-BD, 2021 WL 1035077, at 2 (E.D. Arkansas February 10, 2021); Knickerbocker v. Norman, 938 F.2d 891 (8th Cir. 1991).

However, as discussed above—and as acknowledged by Ms. Hrachova—the Form I-864 support obligation is a separate obligation that arises under federal law, distinct from child support and alimony. *See Brown v. Brown*, 700 F. Supp. 3d 402 (E.D. Va. 2023) (holding that while the property settlement agreement in the divorce proceedings may restrict the wife's right to seek support or maintenance under Maryland state law, the federal obligation the husband incurred under the Form I-864 existed separately and could not be excused by the wife). Indeed, as the Court explained, Mr. Cook has already paid the alimony imposed by the state court in the divorce proceedings and no child support ordered.

Accordingly, Plaintiff's amended motion for final judgment (Doc. 124) is due to be

**denied**.[3]

However, the Court will grant Plaintiff's request to compel Mr. Cook to complete the

**Florida Fact Information Sheet** (Fla. R. Civ. P. Form 1.977). *See, e.g., Power Rental OP CO,*

*LLC v. Virgin Islands Water & Power Authority*, No. 3:20-cv-1015-TJC-MCR, 2023 WL

4187095 (M.D. Fla. May 31, 2023) (discussing how courts routinely grant a judgment

creditor's request to compel the completion of the Fact Information Sheet). Mr. Cook shall

provide Ms. Hrachova a completed Fact Information Sheet on or before **June 12, 2026.**

DONE and ORDERED in Ocala, Florida on May 29, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Truist Bank
Empower Retirement
8515 East Orchard Rd.,
Greenwood Village, CO 80111

---

[3] Ms. Hrachova's initial motion for final judgment (Doc. 122) is due to terminated as **moot** based on the filing of the amended motion. (Doc. 124).